UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ET AL | CIVIL ACTION NO. 3:11-CV-00830 |
|---|---|
| | JUDGE JOHN W. deGRAVELLES |
| VERSUS | |
| | MAG. JUDGE RICHARD L. |
| SMITH TANK & STEEL, INC. | BOURGEOIS, JR. |

## RULING ON SMITH TANK AND STEEL INC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ANTHONY RUDNICKI AND FERNANDO LORENZO

This matter comes before the Court on Defendant Smith Tank & Steel, Inc.'s Motion to Exclude Expert Testimony of Anthony Rudnicki and Fernando Lorenzo (Doc. 51). Oral argument was heard on October 22, 2014.

Considering the law, arguments of parties, and facts in the record, Defendant's motion to exclude is denied.

### 1. *Background*

Defendant Smith Tank and Steel, Inc. ("Smith") was hired by Plaintiff LBC of Baton Rouge, LLC ("LBC") to construct four steel carbon tanks, including an internal floating roof ("IFR") in each tank, at LBC's facility in Sunshine, Louisiana. After the tanks had been in service for approximately 2 years, the IFR in one of the tanks (Tank 100-3) sunk and was badly damaged.

The IFR is a large metal plate that is slightly smaller than the inner dimension of the tank in which it is built. It floats on the top of the product being stored in the tank. Its purpose is to minimize the level of vapor emissions from the tank.

LBC's insurer National Union Fire Insurance Company of Pittsburgh, PA. ("National

Union") paid for the cost of repairs to the tank and for business interruption caused by the failure of the IFR. National Union alleges that it became conventionally and legally subrogated to the rights of its insured LBC, against Smith (Doc. 59, *2-3). This suit is by National Union for the recovery of the insurance proceeds National Union paid to LBC.

Plaintiffs' claim for reimbursement alleges that the failure of the IFR and the damages flowing from that failure were the result of Smith's failure to construct the IFR in a workmanlike manner that was free from defects. Further, plaintiffs claim that these defects in the IFR caused it to fail and cause the damages sued upon.

Smith's challenge to the testimony of National Union's experts Anthony Rudnicki and Fernando Lorenzo will be considered separately.

## 2. Standard to Be Applied

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *See Daubert,* 509 U.S. at 589, 113 S.Ct. at 2794-95. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." 509 U.S. at 593-594, 113 S.Ct. at 2796-97. The Court summarized:
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.,* 121 F.3d 984, 988-89 (5th Cir. 1997).

The cases following *Daubert* have expanded the factors and explained the listing is neither all-encompassing nor is every factor required in every case. *General Elec. Co. v. Joiner,* 522 U.S. 136, 143 (1997); *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Id.* at 146.

This Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* (509 U.S. 579) (1993), which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. V. Carmichael,* 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.,* No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See General Elec. Co. V. Joiner*, 522 U.S. 136, 138-39 (1997 (holding that "[a] district court has considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence"); *see also Watkins v. Telsmith, Inc.,* 121 F.3d 984, 988 (5th Cir. 1997) (holding "[d]istrict courts have wide latitude in determining the admissibility of expert testimony); *Hidden Oaks Ltd. V. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

As explained in *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 164 (E.D. La. 2011):

> When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its

3

expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. Id.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson*, 277 F.R.D. at 165 (citing Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments). Further, as explained in *Scordill v. Louisville Ladder Group, L.L.C.*, No. 02-2565, 2003 WL22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert,* 509 U.S. at 596 [113 S.Ct. 2786]. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (Citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)).

### *3. Anthony Rudnicki*

Smith contends that Rudnicki is 1) not qualified to opine on causation issues in the case; and 2) his opinions regarding the quality of the weld in question and the point at which the weld failed lacks adequate foundation, was not tested, and cannot be verified.

*Rudnicki's Ability to Give Opinion on Causation*

Smith argues that Rudnicki "confessed" his lack of qualifications to opine on the cause of the alleged failure of the IFR (Doc. 51-1, *6). Further, because some of his opinions regarding the quality of the weld and when the crack in the weld occurred is foundational to the question of why the IFR failed, Smith argues that Rudnicki has, in essence, admitted he is unqualified to

4

testify regarding the weld.

National Union agrees that he is not qualified to opine on the cause of the failure of the IFR and states that it does not intend to call him for this purpose (Doc. 60, *11). National Union argues, however, that this does not in any way gainsay his qualifications, expertise and methodology as it applies to the underlying question of the weld.

National Union has stated it does not intend to call Rudnicki on the ultimate causation issue and the Court will not allow such testimony should it be offered at trial. However, the Court agrees with National Union that this in no way prevents him from testifying as it pertains to the underlying issues regarding the weld as long as he is qualified, has utilized adequate methodology and has adequate foundation to testify on these issues.

*Rudnicki's Opinions Regarding the Quality of the Weld and Whether It Existed Prior to the IFR Sinking*

Smith argues that Rudnicki, in reaching his opinion, did not preserve all of the evidence that could have been preserved and did not perform all testing which could have been performed. However, when pressed at oral argument, Smith does not contend that there was any spoliation or intentional destruction of evidence, and the Court finds, that while Rudnicki's handling of the evidence following the failure of the IFR was less than ideal, his failure to preserve the evidence appears to have been innocent. Photographs were taken of the evidence prior to it being thrown away, and all experts had an opportunity to view these photographs. And, indeed, experts on both sides have relied upon the photographs in rendering their opinions.

On reviewing the motions, memoranda and attachments thereto, the Court finds that Rucnicki is sufficiently qualified and utilized adequate methodology to reach his opinions.

Further, the court finds that there is sufficient factual foundation for his opinions so as to allow his testimony to be presented to the jury. Smith's objections to his testimony go to the weight to be given to this testimony, not its admissibility.

### *4. Fernando Lorenzo*

Smith argues that Lorenzo's testimony should be excluded because it is "entirely dependent upon an derivative of" the opinion of National Union's other expert, Anthony Rudnicki. Further, they argue that Lorenzo's testimony is not reliable, is based on inadequate information and failed to rule out other causes.

*Lorenzo's Reliance on Rudnicki*

The Court finds that, contrary to Smith's position, Lorenzo conducted an independent investigation and analysis which supports his opinion. It is true that Lorenzo relied in part on information provided by the other expert, Rudnicki. This is permissible.

Consultation with other experts is entirely permissible under Rule 703. *Callidus Techs.*, 2003 WL 26118097, at *2 (citing *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, 866 F.Supp. 1086, 1095 (N.D. Ill. 1994)) (stating that Rule 703 "allows an expert to rely on information that would otherwise not be admissible including hearsay evidence"); *see also id.* (citing *Janopoulos*, 866 F.Supp. at 1095) ("An expert may even rely on information supplied by another expert witness.").

An expert can rely upon otherwise inadmissible evidence as long as it is of a type "reasonably relied upon by experts in the particular field." Fed.R.Evid. 703. *See also, Monsanto Co. V. David*, 516 F.3d 1009, 1015-1016 (5th Cir. 2008) (finding that expert could rely upon a report prepared by someone else). The purpose of allowing experts to rely on another expert's

opinions is that "an expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion." *Concerned Area Residents for the Environ. V. Southview Farm*, 834 F.Supp. 1422, 1436 (W.D.N.Y. 1993).

"It is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert.'" *In re: Genetically Modified Rice Litigation*, 666 F.Supp.2d 1004, 1033 (E.D. Mo. 2009) (quoting *Dura Auto. Sys. Of Ind., Inc. V. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002).

An expert may rely on any facts or data "of a type reasonably relied upon by experts in the particular field," including facts, data, and opinions that are otherwise inadmissible. Fed.R.Evid. 703. The modern view recognizes that experts often rely on facts and data supplied by third parties. *See, Gussack Realty Co. V. Xerox Co.*, 224 F.3d 85, 94 (2d. Cir. 2000). This includes relying on analyses performed by one's assistants. *See, e.g., McReynolds v. Sodexho*, 349 F.Supp.2d 30, 36-37 (D.D.C. 2004) (admitting expert's opinions based on statistical analyses run by assistants who wrote and understood the computer programming); *Derrickson v. Circuit City Stores, Inc.*, No. 95-3296, 1999 WL 1456538, at *20 (D.Md. Mar. 19 1999) (same).

The term "data" also is intended to encompass the reliable opinions of other experts. Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments; *see also, Mason v. Safeco Ins. Co.*, No. 4:09-cv-1081, 2010 WL 3341582 at *8 (E.D. Mo. Aug. 23, 2010) ("[a]n expert may rely on the reliable opinion of another expert in forming his own opinion"). Courts recognize that an expert may rely on the conclusions and opinions reached by another expert who performed forensic testing. *See Johnson*, 277 F.R.D. at 166 (permitting expert to rely on

conclusions from forensic testing conducted by other experts in products liability case).

*Methodology, Reliability and Support for Lorenzo's Opinions*

The Court has carefully reviewed the motion, memoranda and attachments thereto. The Court believes that Lorenzo utilized adequate methodology and his opinions have adequate foundational support to allow his opinion to be given to the jury. Smith's objections go to the weight to be given the expert testimony, not its admissibility.

**5. Conclusion**

Therefore, Smith's Motion to Exclude the Testimony of Anthony Rudnicki and Fernando Lorenzo (R.Doc. 51) is DENIED.

Signed in Baton Rouge, Louisiana, on November 6, 2014.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**