UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ET AL.** | **CIVIL ACTION NO. 11-830** |
| | **JUDGE JOHN W. deGRAVELLES** |
| **VERSUS** | |
| **SMITH TANK & STEEL, INC.** | **MAG. JUDGE RICHARD L BOURGEOIS, JR.** |

### RULING ON MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on the Motion for Summary Judgment by Smith Tank & Steel, Inc. (Doc. 52). Plaintiff National Union Fire Insurance Company of Pittsburgh, PA, opposes the motion. Oral argument was heard on October 22, 2014, and the Court took the matter under advisement. (Doc. 75).

Considering the briefs, arguments of counsel, the law, and the facts, the Court grants Defendant's motion for summary judgment as to Plaintiff's redhibition claims but denies Defendant's motion for summary judgment in all other respects.

**1. Facts**

Defendant Smith Tank and Steel, Inc. ("Smith") was hired by LBC of Baton Rouge, LLC ("LBC")[1] to construct four steel carbon thanks, including an internal floating roof ("IFR") in each tank, at LPC's facility in Sunshine Louisiana. After the tanks had been in service for approximately 2 years, the IFR in one of the tanks (Tank 100-3) sunk and was badly damaged.

The IFR is a large metal plate that is slightly smaller than the inner dimension of the tank

---

[1] LBC was formerly a Plaintiff in this action but was dismissed by the Plaintiff's Supplemental and Amending Complaint. (See Docs. 8 and 1).

in which it is built. It floats on the top of the product being stored in the tank. Its purpose is to minimize the level of vapor emissions from the tank.

LBC's insurer National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") paid for the cost of repairs to the tank and for business interruption caused by the failure of the IFR. National Union alleges that it became conventionally and legally subrogated to the rights of its insured LBC, against Smith. (Doc. 59 at 2-3). This suit is by National Union for the recovery of the insurance proceeds National Union paid to LBC.

Plaintiffs' claim for reimbursement alleges that the failure of the IBF and the damages flowing from that failure were the result of Smith's failure to construct the IFR in a workmanlike manner that was free from defects. Further, plaintiffs claim that these defects in the IFR caused it to fail and cause the damages sued upon. Plaintiff bases its suit on breach of contract and for redhibition.

## 2. Parties' Arguments

In its Motion for Summary Judgment, Smith first argues that National Union's claim for redhibition is unfounded because it is based on a contract to build, not a contract of sale. (Doc. 52 at 2). Second, Smith argues that even if the claim was based on a contract of sale, plaintiffs' claims for redhibition have prescribed. (*Id*).

In the Opposition to the Motion for Summary Judgment, National Union concedes that Smith's "claims in this case do not sound in redhibition". (Doc. 52 at 3). Therefore, Smith's Motion for Summary Judgment is granted on this point.

Smith's Motion for Summary Judgment on the contract claim is based on three arguments: first, that plaintiffs cannot prove that the IFR was defective; second, even if

defective, plaintiffs cannot prove that the defective condition of the IFR was caused by faulty materials or poor workmanship and, third, that even if there were faulty materials and poor workmanship, those did not cause the IFR to sink and cause the damages complained of. (Doc. 52 at 2-3). Smith alleges that reason that plaintiffs cannot prove these essential elements of its case is because first, the opinions of plaintiffs' experts that the IFR failed because of defects in the construction of the IFR are unreliable and that there is insufficient evidence to support such opinions or conclusions. (Doc. 52 at 14-17).

National Union, on the other hand, argues that its experts are well-qualified and that their opinions are adequately supported. (Doc. 59 at 3 and Doc. 60). National Union argues, in the alternative, that even if its experts are excluded from testifying, there is sufficient evidence in the record to support the essential elements of its claim. (Doc. 59).

Finally, Smith Tank raises in its Reply Brief the issue of waiver. (Doc. 66 at 2-3). Specifically, Smith Tank argues that, under Louisiana law, "a party cannot recover for breach of contract for poor workmanship (1) if that party accepts the work and (2) the alleged defects were discoverable upon reasonable inspection. *Charles C. Cloy, Gen. Contractors, Inc. V. DiVincenti Bros., Inc.*, 308 So.2d 495, 498 (La.App. 1st Cir. 1975) (citing *Maloney v. Oak Builders, Inc.*, 224 So.2d 161 (La.App. 4th Cir. 1969)) ("It is [] well settled that even if the owner proves the existence of the defects or omissions and the cost of repairing them, he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection.")." Smith Tank argues that National Union made certain judicial confessions in its brief barring its action.

National Union responded in oral argument that this rule was not as well settled as Smith

Tank would contend and cited to certain case law, including *Degeneres v. Burgess*, 486 So.2d 769 (La.App. 1 Cir. 1986). In *Defeneres*, the First Circuit explained the distinction between actions in quanti-minoris,[2] which are governed by the redhibition articles, and those actions occasioned by a contractor's faulty construction, which are governed by the Civil Code articles on building contracts, La. Civ. Code arts. 2756-2777. *Deferenes* states:

> Additionally, to recover under quanti-minoris, the plaintiff must prove a lack of knowledge of non-apparent defects (LSA-C.C. arts. 2520-2522); **whereas under the building contract articles, the plaintiff can recover for apparent, as well as non-apparent defects.** *Price v. Huey Childs Builder, Inc.*, **426 So.2d 398 (La.App.2d Cir.1983),** *writ denied*, **433 So.2d 164 (La.1983).**

*Id.* at 772 (emphasis added).

**3. Analysis**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a

---

[2]*Black's Law Dictionary* (9th ed. 2009) defines *actio quanti minories* as "a puchaser's action to recover for his overpayment for a defective item."

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. "In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes[.]" *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir.1991).

In a separate ruling, the Court denies the Motion to Exclude the testimony of National Unions' experts Rudniki and Lorenzo. For the reasons given in that ruling, the Court finds that there is sufficient evidence in the record to support the opinion of these two experts. Without repeating its reasons given in that ruling, the Court finds that this same evidence raises issues of material fact regarding whether there were defects in the IFR, whether those defects were caused by faulty workmanship on the part of Smith and whether those defects caused or contributed to the damages sustained. Thus, the Court denies the motion for summary judgment as to the breach of contract claims.

Concerning the waiver issue, both Defendant's and Plaintiff's position is supported by case law. *Compare* James S. Holliday, Jr. and H. Bruce Shreves, La. Prac. Constr. Law § 7:19 (May 2014) ("whereas, under the building contract articles, the plaintiff can recover for apparent as well as non-apparent defects") and Holliday and Shreves, La. Prac. Constr. Law § 4:2 ("It is, however, well settled in Louisiana that even if an owner proves all the elements of such a claim, the owner is barred from recovering the costs thereof if the work was accepted without qualification, despite imperfections which were discoverable upon reasonable inspection (i.e., despite patent defects)").

Given the absence of guidance from the Louisiana Supreme Court, the Court believes that Plaintiff's position is more persuasive and consistent with the governing Civil Code articles.

As explained above, this is an action on a building contract, not an action in redhibition, which specifically exclude recovery for non-apparent defects. See La. Civ. Code art. 2521. Unlike the redhibition articles, La. Civ. Code art. 2769 provides:

> If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.

Thus, the plain and unambiguous language of this article requires a contractor to pay damages for all losses, not just those that are unapparent.

The Court is further persuaded by *Price v. Huey Childs Builder, Inc.*, 426 So.2d 398 (La.App.2d Cir.1983), *writ denied*, 433 So.2d 164 (La.1983). In *Price*, the Louisiana Second Circuit discussed the distinction between actions related to a contract of sale and actions "characterized as a construction contract or a sale of services." *Id.* at 400. The Court explained that construction contracts are governed by the Civil Code articles contained in Book III, Title IX, Chapter 3, Section 3 of the Civil Code, Articles 2756 through 2777.[3] The *Price* court analyzed Article 2769 and explained,

> [t]he stipulated remedy, as provided by Articles 2769 and 2762,[4] is not *redhibition* but contractual damages - the amount of loss incurred by the obligee as a result of the obligor's non-performance. Therefore, redhibitory rules- including the rule precluding recovery for an apparent defect - are inapplicable here and the more general rules regarding the assessment of actual damages are instead operative.

---

[3]Chapter 3 is entitled "Of the Letting Out of Labor or Industry," and Section 3 is entitled "Of Constructing Buildings According to Plots, and Other Works by the Job, and of Furnishing Materials."

[4]La. Civ. Code art. 2762 provides:

If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.

*Id.* at 402.  The *Price* court concluded:

> Since the contract which is operative here is a construction contract, Articles 2769 and 2762 mandate that a *damages* rather than a *redhibition* analysis is appropriate in assessing recovery. Because a redhibition analysis is inapplicable, the redhibition rule limiting recovery to nonapparent defects is equally inapplicable. We therefore amend the trial court's award to reflect our holding that the instant plaintiffs are not limited to redhibitory remedies and may thus recover for *apparent defects*.

*Id.* at 403.

The same reasoning applies here.  As explained above, both parties agree that this is an action to build, not an action in redhibition.  Thus, the Plaintiff can recover for apparent defects. Accordingly, the Court denies summary judgment on this issue.

### 4. Conclusion

Accordingly, Smith's Motion for Summary Judgment is granted as to National Union's redhibition claims but, in all other respects, is denied.

Signed in Baton Rouge, Louisiana, on <u>November 6, 2014</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**